UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AFSHIN HOUSHMANDIMANLOO,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-01861-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS (A-Number 226 164 421)<br><br>(Doc. 3)<br><br>**7-Day Objection Period** |

Petitioner Afshin Houshmandimanloo, a federal immigration detainee proceeding by counsel, initiated this action on March 5, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Doc. 3).  Petitioner is in the custody of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility.  (Doc. 3 ¶ 1).  Respondents are Sergio Albarran, Director of Enforcement and Removal Operations for the San Francisco ICE Field Office; Todd M. Lyons, formerly Acting Director of ICE; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); DHS; Todd Blanche, Acting United States Attorney General;[1] the unnamed Warden of the California City Detention Facility; and the Executive Office for Immigration Review ("EOIR").  *See id.*  At the Court's direction, on March 31, 2026, Respondents timely filed a response to the petition.  (Doc. 9).  For the reasons set forth herein, the

---

[1] Markwayne Mullin is automatically substituted for the former Secretary of DHS, Kristi Noem, and Todd Blanche for Pamela Bondi, former United States Attorney General.  Fed. R. Civ. P. 25(d).

undersigned recommends that Petitioner's petition for writ of habeas corpus be granted.

## I.      Relevant Background

The relevant facts are drawn from the parties' filings. *See* (Docs. 3, 9). Petitioner is a citizen and native of Iran who entered the United States on April 16, 2025, without inspection and was detained. He received a positive credible fear determination and filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. He had two master calendar hearings: the first was held on November 5, 2025, and the second on December 10, 2025. During the latter, his case was set for an individual hearing on April 22, 2026. On February 22, 2026, he was transferred from the Otay Mesa Detention Facility to the California City Detention Facility. (Doc. 3 at 5). His case has "now been reset to a master calendar hearing on March 11, 2026, at the Adelanto Immigration Court." *Id.* at 6.

Respondents assert that Petitioner was apprehended at the border and placed in expedited removal proceedings, and has remained in detention for the pendency of those proceedings, during which time he filed an application for asylum. (Doc. 9 at 1). The asylum officer found that Petitioner had a credible fear of persecution and the expedited removal proceedings are stayed pending resolution of the asylum claim. *Id.* at 2. Respondents attach to their response a DHS Record of Deportable/Inadmissible Alien form, a Notice to Appear form, and a Notice of Hearing in Removal Proceedings form. (Docs. 9-1, 9-2, 9-3).

The Court also takes judicial notice that Petitioner has an upcoming individual hearing on May 29, 2026.[2]

## II.     Governing Authority

### A.      The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus

---

[2] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited May 21, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

**B.      Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)**

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225.  Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

> **1.      Full Removal Proceedings and Discretionary Detention (§ 1226)**
>
> The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).
>
> "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of

the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

## 2. Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

4

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible

fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has

6

made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

## III.     Exhaustion

### A.     Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).  The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)).  "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B.     Analysis

Neither Petitioner nor Respondents address the issue of exhaustion.  *See* (Docs. 3, 9).

The Court finds that the prudential exhaustion requirement should be waived as it would be

futile to seek release by administrative means given Respondents' position that Petitioner is subject to mandatory detention under § 1225(b).  *See* (Doc. 9 at 1); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022).  Further, the BIA has held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile.  *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

For these reasons and because Respondents do not argue Petitioner should be required to exhaust administrative remedies, the undersigned recommends that the prudential exhaustion requirement be waived for Petitioner's claim for habeas corpus relief.  *See, e.g.*, *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

## IV.  **Discussion**

Petitioner asserts that his continued detention violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  (Doc. 3 at 11).

### A.    **Procedural Due Process**

#### 1.    Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V).  "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and

8

procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

> 2.      Analysis – Liberty Interest

On Petitioner's as-applied procedural due process challenge to his continuing detention by immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and …[(2)] the procedures necessary to ensure any

deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

As Petitioner was detained at the border and has not been released from detention during the pendency of removal proceedings, it is clear that his detention falls under the mandatory detention provision of § 1225(b)(1)(B)(ii). *See Doe v. Andrews*, No. 1:25-cv-00333-JLT-HBK (HC), 2026 WL 797694, at *5 (E.D. Cal. Mar. 23, 2026) ("… Petitioner entered the United States at a port of entry without admission or parole … was apprehended by CBP near the border; was ordered removed through expedited removal; claimed fear of returning to Belize; received a positive credible fear determination; was issued a Notice to Appear vacating his expedited order of removal … and was placed in immigration proceedings pending a determination on his asylum application … Petitioner falls under § 1225(b)(1)(B)(ii)'s mandatory detention provision.").

Consistent with the Supreme Court's holding in *Zadvydas* that noncitizen immigrants unlawfully in the United States retain due process rights, the undersigned agrees with other judges of this Court in finding that, as Petitioner has been detained and deprived of his liberty and such deprivation may continue for an indefinite period, Petitioner has a liberty interest. *See Freitez Lopez v. Warden of California City Det.* Ctr., No. 1:26-cv-1236 KES SAB (HC), 2026 WL 918069, at *2 (E.D. Cal. Apr. 3, 2026) (finding for petitioner detained under § 1225(b) that "[a]s petitioner has been deprived of the liberty secured by the due process clause—which will continue for an unidentified and indefinite period—petitioner has established a clear liberty interest"); *Mohammed v. Warden of California City Det. Ctr.*, No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368, at *3 (E.D. Cal. Jan. 26, 2026) (finding for petitioner detained under § 1225(b) a "clear liberty interest in securing his freedom from detention"); *Doe v. Andrews*, 2026 WL 797694, at *5 (providing a discussion of caselaw regarding INA detention statutes and find that "relevant caselaw under the various INA detention provisions—and under § 1225(b)(1) specifically—do not bar Petitioner's due process claim").

### 3.  Analysis – *Lopez* Factors

Because Petitioner has shown he has a protected liberty interest in securing his freedom

10

from detention, the undersigned must determine whether Petitioner's detention is unreasonable. Following the prevailing practice in this District in evaluating the due process rights of a noncitizen detained pursuant to a mandatory detention regime, the undersigned considers the factors articulated in *Lopez v. Garland*, 631 F. Supp. 3d 870 (hereinafter "*Lopez*"). *See Freitez Lopez*, 2026 WL 918069, at *2 ("Although *Lopez* identified these factors in evaluating a detention under Section 1226(c), the same factors are appliable in evaluating a detention under Section 1225(b).") (citing *Doe v. Andrews*, No. 1:25-cv-00333-JLT-HBK (HC), 2026 WL 797694, at *10 (noting the *Lopez* test is "in essence a truncated version of the factors enumerated in *Banda* [*v. McAleenan*, 385 F. Supp. 3d 1099]")); *see also Akmal v. Warden of California City Det.*, No. 1:25-cv-01921-DC-DMC-HC, 2026 WL 657606, at *6 (E.D. Cal. Mar. 9, 2026), *report and recommendation adopted*, No. 1:25-cv-01921-DC-DMC (HC), 2026 WL 825750 (E.D. Cal. Mar. 25, 2026) ("Although *Lopez* concerned mandatory detention under § 1226(c), the Court finds *Lopez's* reasoning applies equally to mandatory detention under § 1225(b). Accordingly, the Court will apply the *Lopez* test.").

The *Lopez* factors are as follows: "[t]o determine whether § [1225(b)] detention has become unreasonable, the Court will look to [1] the total length of detention to date, [2] the likely duration of future detention, and [3] the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

As to the first factor, Petitioner asserts, and Respondents do not dispute, that he has been detained since April 2025. As of the current date, Petitioner has therefore been detained for approximately 13 months. Other judges of this court have found that detention for 14, 15, 17, and 20 months under § 1225(b) without a bond hearing, and where the petitioner either had a credible fear or a pending final determination on an asylum application, was unreasonably prolonged. *See Hasan v. Warden of the California City Det. Facility*, No. 2:26-cv-0282-DJC-JDP, 2026 WL 972658, at *4 (E.D. Cal. Apr. 10, 2026), *report and recommendation adopted sub nom. Hasan MD v. Warden of California City Det. Facility*, No. 2:26-cv-0282-DJC-JDP, 2026 WL 1051852 (E.D. Cal. Apr. 17, 2026) (finding length of detention of 14 months weighed in petitioner's favor); *Saribekyan v. Chestnut*, No. 1:26-cv-01696-DJC-DMC, 2026 WL 776031, at *2 (E.D. Cal. Mar.

11

19, 2026) (finding length of detention of 15 months weighed in petitioner's favor); *Freitez Lopez*, 2026 WL 918069, at *3 (finding 17-month duration of detainment supported analysis that detention was unreasonable); *Doe*, 2026 WL 797694, at *10 (finding the same where petitioner was detained for over 20 months).

Judges of other districts within the Ninth Circuit have found similar or shorter lengths of detainment under § 1225(b) without a bond hearing to be unreasonable. *See Amado v. United States Dep't of Just.*, No. 25-cv-2687-LL(DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (citing cases and noting, where petitioner had spent over 13 months in confinement, that courts "have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable"); *Yagoub v. Larose*, No. 26-cv-914 JLS (JLB), 2026 WL 673799, at *2 (S.D. Cal. Mar. 10, 2026) ("Petitioner's length of detention, nearly eight months, without a bond hearing weighs in Petitioner's favor.").

Consistent with these reasoned opinions, the undersigned finds that the length of Petitioner's detention weighs in favor of the contention that detainment is unreasonable.

As to the second factor, the likely length of future detention, there is no evidence in the record supporting the fact that Petitioner's removal proceedings will soon be completed. Respondents provide no such analysis nor attach any exhibits in furtherance of the contention that Petitioner will soon be removed. Indeed, Respondents acknowledge that Petitioner's removal proceedings are stayed pending the determination on his asylum application. (Doc. 9 at 2). Courts have found that such processes may take up to two years to resolve. Thus, this factor weighs in favor of Petitioner's detention being unreasonable. *See Imani v. Cantu*, No. CV 26-01933 PHX DJH (CDB), 2026 WL 1406307, at *10 (D. Ariz. May 4, 2026), *report and recommendation adopted*, No. CV-26-01933-PHX-DJH, 2026 WL 1398596 (D. Ariz. May 19, 2026) ("Petitioner's application for asylum was filed [] nine months ago. If an immigration judge denies the application … and Petitioner appeals … it will likely take a year for the BIA to reach a decision regarding the denial of asylum and order of removal. Should Petitioner exercise his right to appeal any negative decision by the BIA to the Ninth Circuit Court of Appeals, a decision from the appellate court could take up to two years."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1119

(W.D. Wash. 2019) ("If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit.  This process may take up to two years or longer."); *Freitez Lopez*, 2026 WL 918069, at *3 ("Respondents do not identify any end date for petitioner's detention—he essentially faces indefinite detention pending review of his asylum claim.") (citing, *inter alia*, *Banda*, 385 F. Supp. 3d at 1119).

When evaluating the third factor, the delays in the removal proceedings caused by the petitioner and the government, courts take into account the "possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration," and the fact that respondents may play a part in causing delays.  *Doe*, 2026 WL 797694, at *11-12 (alterations in original; quoting *Banda*, 385 F. Supp. 3d at 1119).  Here, there are no indications in the record that Petitioner engaged in dilatory tactics or otherwise sought to unnecessarily delay proceedings.  Nor do Respondents make any such allegations.  *See* (Doc. 9).  The only action Petitioner appears to have taken regarding the proceedings is filing an application for asylum, where an asylum officer thereafter found a credible fear of persecution.  *Id* at 2.  However, "'Petitioner is entitled to raise legitimate defenses to removal … and such challenges to his removal cannot undermine his claim that detention has become unreasonable.'"  *Magar v. Warden of California City Det. Facility*, No. 1:26-cv-03063-DJC-CSK, 2026 WL 1365777, at *3 (E.D. Cal. May 15, 2026) (alterations in original; quoting *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019)).

Additionally, Petitioner asserts that he had two master calendar hearings (one in November 2025 and one in December 2025), with an individual hearing set for April 22, 2026.  However, on February 22, 2026, he was transferred from Otay Mesa Detention Facility to California City Detention Facility.  Petitioner states that his case has "now been reset to a master calendar hearing on March 11, 2026."  (Doc. 3 at 5-6).  Further, the EOIR Automated Case Information database shows an individual hearing set on May 29, 2026.  Though not entirely clear from the record, it appears that Petitioner's individual hearing was delayed, possibly as a result of the facility transfer.  In light of the record, the undersigned finds that this factor weighs slightly in favor of Petitioner.

13

In sum, the undersigned finds that under the factors set forth in *Lopez*, the governmental interests at stake are outweighed by the length of Petitioner's detention, the likelihood of future detention, and delays in the removal proceedings, and the Petitioner's detention has become unreasonable. *See Freitez Lopez*, 2026 WL 918069, at *4 (noting that the governmental interest at stake was not detention itself but the government's ability to detain petitioner without a bond hearing).

### B. Remedy

As the record does not evidence that Petitioner was provided a constitutionally compliant bond hearing before a neutral decision maker, the undersigned will therefore recommend that such a hearing be ordered, and the government bear the burden of establishing at the bond hearing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight sufficient to justify denial of bond. *See Yacoub v. Scott*, No. 2:26-cv-00783-TL, 2026 WL 1107805, at *8 (W.D. Wash. Apr. 23, 2026) (ordering bond hearing and noting that "Petitioner has not demonstrated (or alleged) that his detention is unlawful *per se*, only that his continued detention without any hearing or neutral review is unlawful now that it has become unreasonably prolonged") (quotations omitted); *Freitez Lopez*, 2026 WL 918069, at *4 (ordering bond hearing where government must establish by clear and convincing evidence that petitioner is a flight risk or danger to the community to justify denial of bond); *Doe*, 2026 WL 797694, at *12 (same).

### V. Conclusion and Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 3) be GRANTED.

2. Respondents be ORDERED to provide Petitioner a bond hearing before a neutral arbiter at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified. Petitioner shall be given adequate notice at least seven (7) days in advance of the hearing and be allowed to have counsel present.

3. The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this

case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 22, 2026**

_____
UNITED STATES MAGISTRATE JUDGE